IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 09-cv-02595-WYD-MEH

AKEEM ABDUALLAH MAKEEN,

    Plaintiff,

v.

COMCAST OF COLORADO X, LLC,

    Defendant.

---

## RECOMMENDATION

---

**Michael E. Hegarty, United States Magistrate Judge.**

Pending before the Court is Defendant's Motion for Partial Dismissal of Amended Complaint [filed January 21, 2010; docket #20]. The matter is referred to this Court for recommendation. (Docket #21.) The motion is fully briefed, and oral argument would not assist the Court in its adjudication. For the following reasons, the Court RECOMMENDS Defendant's Motion be **GRANTED**.[1]

---

[1] Be advised that all parties shall have fourteen (14) days after service hereof to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned. Fed. R. Civ. P. 72. The party filing objections must specifically identify those findings or recommendations to which the objections are being made. The District Court need not consider frivolous, conclusive or general objections. A party's failure to file such written objections to proposed findings and recommendations contained in this report may bar the party from a de novo determination by the District Judge of the proposed findings and recommendations. *United States v. Raddatz*, 447 U.S. 667, 676-83 (1980); 28 U.S.C. § 636(b)(1). Additionally, the failure to file written objections to the proposed findings and recommendations within fourteen (14) days after being served with a copy may bar the aggrieved party from appealing the factual findings of the Magistrate Judge that are accepted or adopted by the District Court. *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *In re Garcia*, 347 F. App'x 381, 382-83 (10th Cir. 2009).

**BACKGROUND**

Plaintiff initiated this action proceeding *pro se* on November 4, 2009. (Docket #1.) After Plaintiff filed an Amended Title VII Complaint on January 6, 2010, Defendant responded with this Motion for Partial Dismissal.[2] (Dockets ##22, 20.) Plaintiff filed a response, after which counsel entered an appearance on behalf of Plaintiff. (Dockets ##42, 47.) With permission of the Court, counsel for Plaintiff submitted a Supplemental Response to the motion. (Docket #34.) Defendant filed its reply, and the matter is ripe for recommendation. (Docket #35.)

Plaintiff sues his former employer, Comcast of Colorado X, LLC ("Comcast"). In his Amended Complaint, Plaintiff brings three claims. The First Claim asserts violations of the ADA and FMLA. (Docket #22 at 3.) The Second Claim alleges two Title VII violations, for racial and religious discrimination (also brought pursuant to Section 1981 of 42 U.S.C.), as well as a violation of the Lilly Ledbetter Fair Pay Act of 2009. (*Id*. at 8.) The Third Claim describes a contention of intentional infliction of emotional distress. (*Id*. at 13.) Plaintiff requests reinstatement, damages, and injunctive relief. (*Id*. at 15.)

In its motion, Defendant asks the Court to dismiss Plaintiff's Title VII claims for religious and national origin discrimination; the ADA and Title VII claims for failure to promote, failure to provide equal training opportunities, unequal pay and harassment; the claim for religious discrimination pursuant to Section 1981; and the claim for a violation of the Lily Ledbetter Fair Pay Act. (Docket #20 at 1.) Plaintiff concedes dismissal of his claims pursuant to Section 1981 for religious discrimination and pursuant to the Lily Ledbetter Fair Pay Act. (Docket #34 at 2.) Thus,

---

[2]Plaintiff initially sued "Comcast Cable Communications, LLC; Comcast; and Comcast of Colorado X, LLC." (Docket #22 at 1.) On April 28, 2010, the parties jointly moved to dismiss Comcast Cable Communications, LLC and Comcast as defendants, leaving solely Comcast of Colorado X, LLC. (Docket #41; docket #42 (granting dismissal).)

the Court evaluates the Motion for Partial Dismissal regarding Plaintiff's Title VII claims for religious and national origin discrimination and the ADA and Title VII claims for failure to promote, failure to provide equal training opportunities, unequal pay and harassment.

Defendant contends that Plaintiff failed to properly exhaust administrative remedies regarding his Title VII claims for religious and national origin discrimination. (Docket #20 at 5.) Defendant believes that the Colorado Civil Rights Division (CCRD) (with whom he filed his claim) addressed only charges of discrimination based on race and disability, not religion or national origin. (*Id*. at 6.) Defendant raises the same argument against Plaintiff's ADA claims for failure to promote, failure to provide equal training opportunities, unequal pay, and harassment. (*Id*.) Defendant asserts that Plaintiff alleged discrimination only on the basis that Comcast failed to provide Plaintiff with a reasonable accommodation on February 4, 2008, before terminating Plaintiff's employment on February 5, 2008. (*Id*.)

In response, Plaintiff attests that he alleged discrimination based on race, sex, religion, age, disability, FMLA, and retaliation in his "charging documents" filed with the CCRD. (Docket #24 at 1.) Plaintiff further represents that he properly described claims for "discipline action," failure to promote, and unequal wages. (*Id*.) Plaintiff states that in a charge of discrimination filed with the EEOC, he designated violations of the "ADA, Title VII, race, retaliation and FMLA." (*Id*.) Plaintiff contends that Defendant was provided notice of his claims through the charging documents and through the documents Plaintiff attached to his Amended Complaint. (*Id*. at 3-4.) Plaintiff believes that the CCRD investigation was faulty. Despite the "faulty" investigation, he alleges that he complied with the timing requirements and obtained a letter regarding his right to sue, thus he properly exhausted administrative remedies. (*Id*. at 4.) Plaintiff included four attachments with his response. (*Id*. at 7-12.)

After counsel for Plaintiff entered an appearance, the Court permitted Plaintiff, at his request, to file a supplement to the submitted response. (Docket #34.) In this supplement, Plaintiff explains that the CCRD's staff is ultimately responsible for drafting a formal charge of discrimination, based on an "intake process." (*Id.* at 2.) Plaintiff states that the "CCRD prepared the complaint based upon the information provided by Plaintiff," and Plaintiff signed the charge "as instructed by CCRD." (*Id.* at 3.) Plaintiff then asserts that he "reasonably relied on CCRD to prepare the charge" and "believed that the charge prepared by CCRD included all of the claims described in his intake questionnaire." (*Id.*) Plaintiff argues that the purposes behind the exhaustion of administrative remedies requirement were fulfilled in this case; that is, the CCRD had an opportunity to investigate, Defendants were put on notice, and an attempt at conciliation was made. Therefore, Plaintiff's claims should be allowed to proceed in the suit at hand. (*Id.* at 5.) Plaintiff included an additional two attachments with this supplemental response, which are documents also included with Plaintiff's Amended Complaint. (*Id.* at 34-1, 34-2.)

Defendant replied, arguing the Court should exclude the "extraneous evidence" included with Plaintiff's response and supplemental response. (Docket #35 at 2.) Defendant emphasizes that because the charge of discrimination and the CCRD's determination refer to only claims of discrimination based on race and disability, Plaintiff's claims based on religion and national origin in this matter should be dismissed. (*Id.* at 4.)

For the reasons stated below, the Court agrees with Defendant and recommends the Motion for Partial Dismissal be granted.

**STANDARD OF REVIEW**

*I.     Fed. R. Civ. P. 12(b)(1)*

Defendant brings its Motion for Partial Dismissal pursuant to Fed. R. Civ. P. 12(b)(6), failure to state a claim upon which relief can be granted. (Docket #20 at 4-5.) However, exhaustion of administrative remedies is a jurisdictional prerequisite to bringing suit under Title VII. *See Shikles v. Sprint/United Mgmt. Co.*, 426 F.3d 1304, 1317 (10th Cir. 2005) (". . . a plaintiff's exhaustion of his or her administrative remedies is a jurisdictional prerequisite to suit under Title VII - not merely a condition precedent to suit"). Accordingly, the Court applies the legal standard governing subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1). *See Daneshvar v. Graphic Tech., Inc.*, 237 F. App'x 309, 313 (10th Cir. 2007). The Court further explains the legal standard for exhaustion of administrative remedies in the context of a Title VII action in its analysis below.

*II.     Pro Se Complaint*

Plaintiff commenced this action *pro se* and filed his Amended Complaint *pro se*. Even though counsel has since entered an appearance on Plaintiff's behalf, Plaintiff's *pro se* Amended Complaint is the governing pleading. Accordingly, the Court will construe his "pleadings liberally, applying a less stringent standard than is applicable to pleadings filed by lawyers. [The] court, however, will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on plaintiff's behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (quotations and citations omitted). The Tenth Circuit interpreted this rule to mean, "if the court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so despite the plaintiff's failure to cite proper legal authority, his confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). However, this interpretation

is qualified in that it is not "the proper function of the district court to assume the role of advocate for the pro se litigant." *Id.*; *see also Peterson v. Shanks*, 149 F.3d 1140, 1143 (10th Cir. 1998) (citing *Dunn v. White*, 880 F.2d 1188, 1197 (10th Cir. 1989)).

## III.     *Effect of Exhibits*

Defendant asks the Court to exclude the "extraneous evidence" attached to Plaintiff's response and supplemental response. (Docket #35 at 2-3.) "Courts have broad discretion in determining whether or not to accept materials beyond the pleadings." *Lowe v. Town of Fairland, Okla.*, 143 F.3d 1378, 1381 (10th Cir. 1998). Fed. R. Civ. P. 12(d) requires that, on a motion brought pursuant to Rule 12(b)(6) or 12(c), if "matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." Unless dismissal can be justified without considering the outside materials, the failure to follow Rule 12(d)'s mandate may result in reversible error. *Alvarado v. KOB-TV, L.L.C.*, 493 F.3d 1210, 1216 (10th Cir. 2007). However, "[w]hen a party challenges the allegations supporting subject-matter jurisdiction, the 'court has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts.' . . . 'In such instances, a court's reference to evidence outside the pleadings does not convert the motion [to dismiss] to a Rule 56 motion [for summary judgment].'" *Davis ex rel. Davis v. United States*, 343 F.3d 1282, 1296 (10th Cir. 2003) (citation omitted).

Here, the Court declines to convert Defendant's motion to a motion for summary judgment and rejects most documents not attached to the Amended Complaint and the Motion for Partial Dismissal. In support of his Amended Complaint, Plaintiff attached a number of documents, including a copy of the Colorado Civil Rights Division ("CCRD") Complaint Process (*id.* at 17), Plaintiff's CCRD completed Intake Questionnaire (*id.* at 23), Plaintiff's CCRD completed Disability

Questionnaire (*id.* at 35), Plaintiff's EEOC Notice of Right to Sue (Issued on Request) (*id.* at 39), the Colorado Department of Labor and Employment's Hearing Officer's Decision (*id.* at 41), and the Colorado Department of Regulatory Agencies' written Determination (*id.* at 43). Defendant included a copy of the actual Charge of Discrimination submitted to the CCRD and EEOC (docket #20 at 11), a copy of the letter from the State of Colorado informing Plaintiff his case was dismissed (*id.* at 12), and the text of the Lily Ledbetter Act (*id.* at 13).

The Charge of Discrimination and Notice of Right to Sue letter are directly referred to in the *pro se* form Title VII Amended Complaint. (Docket #22 at 2.) "[I]f a plaintiff does not incorporate by reference or attach a document to its complaint, but the document is referred to in the complaint and is central to the plaintiff's claim, a defendant may submit an indisputably authentic copy to the court to be considered on a motion to dismiss." *GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir. 1997) (citations omitted). *See also Alvarado*, 493 F.3d at 1215 (stating the same). Plaintiff does not contest these documents' authenticity. The Court accepts these attachments, as well as the email correspondence between Plaintiff and the CCRD investigative staff included with Plaintiff's response, for consideration with the Motion for Partial Dismissal, as the dismissal concerns subject matter jurisdiction over specific claims due to lack of proper exhaustion.

Regarding the documents included with Plaintiff's response and supplemental response, the Court finds that the attachments are either duplicative of those adjoined to Plaintiff's Amended Complaint, or unnecessary for the adjudication of the motion at hand, other than the email correspondence between Plaintiff and the CCRD investigative staff. (*See* docket #24 at 7-8.) Thus, the Court rejects these attachments and declines to review them for the purposes of this recommendation.

## ANALYSIS

To exhaust administrative remedies, a plaintiff must file a charge of discrimination with the EEOC. "A plaintiff's claim in federal court is generally limited by the scope of the administrative investigation that can reasonably be expected to follow the charge of discrimination submitted to the EEOC." *MacKenzie v. City & County of Denver*, 414 F.3d 1266, 1274 (2005). Each incident of discrimination and each retaliatory adverse employment decision constitutes a separate actionable unlawful employment practice for which administrative remedies must be exhausted. *Martinez v. Potter*, 347 F.3d 1208, 1210 (10th Cir. 2003) (citing *National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 110-11 (2002)).

The Court is to "liberally construe charges filed with the EEOC in determining whether administrative remedies have been exhausted as to a particular claim." *Jones v. U.P.S., Inc.*, 502 F.3d 1176, 1186 (10th Cir. 2007). "[W]hen an employee seeks judicial relief for incidents not listed in his original charge to the EEOC, the judicial complaint nevertheless may encompass any discrimination like or reasonably related to the allegations of the EEOC charge, including new acts occurring during the pendency of the charge before the EEOC." *Mitchell v. City and County of Denver*, 112 F. App'x 662, 667 (10th Cir. 2004) (citing *Martinez*, 347 F.3d at 1210). A claim is considered "reasonably related" when "the conduct complained of would fall within the scope of the [administrative] investigation which can reasonably be expected to grow out of the charge that was made." *Id.* (quoting *Deravin v. Kerik*, 335 F.3d 195, 200-01 (2d Cir. 2003)). This pleading standard recognizes that often, administrative charges are filed by employees "who do not have the benefit of counsel." *Id.*

As stated, Defendant argues that because the Charge of Discrimination refers only to race and disability (reasonable accommodation) discrimination, Plaintiff's claims for religious and

national origin discrimination should be dismissed. (Docket #20 at 5.) Additionally, Defendant asserts the Charge of Discrimination does not refer to any claims of failure to promote, failure to provide equal training opportunities, unequal pay, and harassment, brought pursuant to Title VII or the ADA. (*Id*. at 6.) Defendant believes that the scope of the Charge of Discrimination and the CCRD's Determination govern the scope of this lawsuit, and any extraneous claims should be dismissed for failure to exhaust.

In response, Plaintiff contends that he properly identified all of his claims in the intake questionnaire, and he "reasonably relied on CCRD to prepare the charge," consistent with the EEOC's process in the State of Colorado. (Docket #34 at 3.) Plaintiff believes that he properly alleged discrimination based on race, sex, religion, age, disability, FMLA, and retaliation in his "charging documents" filed with the CCRD. (Docket #24 at 1.) Plaintiff asserts that the purpose of the exhaustion requirement was satisfied, in that the CCRD had an opportunity to investigate, Defendants were put on notice, and an attempt at conciliation was made. (Docket #34 at 5.)

## I.    *The Content of the Intake Questionnaire and Charge of Discrimination*

Although the Court recognizes its obligations to liberally construe the Amended Complaint in this matter and the filings by Plaintiff during the administrative process, the Court concludes that the content of the Charge of Discrimination governs the scope of this proceeding. Here, Plaintiff relies not on the Charge of Discrimination filed with the EEOC by the CCRD, but on the intake questionnaire he filed with the CCRD when initiating the administrative process. As to the Charge of Discrimination, Plaintiff believes he is excused from any deficiency as it was prepared by the CCRD, not by himself.

This case is factually similar to *Rodriguez v. Miller Waste Mills, Inc*., 72 F. App'x 839 (10th Cir. 2003). In *Rodriguez*, the plaintiff appealed the district court's dismissal of his national

origin/race discrimination claim for failure to exhaust administrative remedies. The plaintiff "assert[ed] his claim was properly presented to the EEOC because he checked the appropriate box on the EEOC intake questionnaire and that the claim was not included in the formal charge because of an error committed by the EEOC." 72 F. App'x at 845. The plaintiff argued that his claim of national origin/race discrimination was reasonably related to his claim of age discrimination, and "the inclusion of a national origin/race discrimination claim in his intake questionnaire is sufficient to exhaust his claim." *Id.* at 845-46. The Tenth Circuit rejected both contentions. As to the plaintiff's belief that the EEOC "somehow led him astray," the *Rodriguez* court found that the correspondence between the plaintiff and the EEOC representative regarding plaintiff's request to amend the charge indicated the plaintiff was instructed to submit additional information but never did. *Id.* at 846. Thus, the Tenth Circuit found that the lower court properly dismissed the plaintiff's claim of national origin/race discrimination for lack of exhaustion.

In this matter, Plaintiff included a copy of the intake questionnaire he filed with the CCRD as an attachment to his Amended Complaint. (Docket #22 at 23.) The intake questionnaire includes a large disclaimer at the top of the first page, explaining "THIS FORM IS NOT A CHARGE OF DISCRIMINATION . . .". (*Id.*) Plaintiff identified race, sex, religion, age, disability, and retaliation as the bases for discrimination against Defendant. (*Id.*) Plaintiff did not identify national origin. Under disability and retaliation, Plaintiff wrote "seizures" and "FML," which the Court interprets as Plaintiff's use of FMLA leave. (*Id.*) This is consistent with the Disability Questionnaire he filled out for the CCRD, in which he stated "seizures" as the alleged type of impairment. (*Id.* at 35.) In the section regarding Employment Harm, the Court discerns checkmarks identifying Demotion, Discipline, Discharge, and Unequal wages. (*Id.* at 24.) Failure to promote appears to have been checked, then scratched out. (*Id.*) In the Statement of Discrimination section within the intake

questionnaire, Plaintiff attached a type-written statement about the reasons why he felt he had been discriminated against. (*See id.* at 29.) The statement included a factual description of a disciplinary incident, as well as the facts surrounding Plaintiff's FMLA leave. (*See id.*) In the description of the disciplinary incident, Plaintiff makes no reference to race, sex, religion, or age. Both the intake and disability questionnaires are signed by Plaintiff and dated April 14, 2008.

The Charge of Discrimination names race and disability as the bases for Plaintiff's claims and describes how Plaintiff believes Defendant denied him a reasonable accommodation for his disability on February 4, 2008. (*Id.*) The Charge of Discrimination is also signed by Plaintiff and dated May 11, 2008. (Docket #20 at 11.)

In the Tenth Circuit, "[a] plaintiff's claim in federal court is generally limited by the scope of the administrative investigation that can reasonably be expected to follow the charge of discrimination submitted to the EEOC." *MacKenzie*, 414 F.3d at 1274. As Plaintiff did not identify national origin discrimination as a basis for his claim on the intake questionnaire, the Court agrees with Defendant that Plaintiff's claim for national origin discrimination may not proceed in this action. Regarding Plaintiff's claim for religious discrimination, it is undisputed that Plaintiff designated his religion as a basis for discrimination on the intake questionnaire. However, the Court believes that Plaintiff, like the plaintiff in *Rodriguez*, should have sought to amend the Charge of Discrimination instead of verifying the charge with his signature. Moreover, as demonstrated by the correspondence between Plaintiff and the CCRD investigative staff, Plaintiff enjoyed access to direct communication with the CCRD. (*See* docket #24 at 7-8.) Plaintiff, not the CCRD, is uniquely in the best position to know the alleged bases of discrimination against his former employer, and bears the responsibility to ensure such information is communicated properly to the CCRD and the EEOC.

Regarding Plaintiff's identification of Demotion, Discipline, Discharge, Unequal wages, and, in the interests of liberally construing the *pro se* questionnaire, Failure to promote, the Court concludes that only Discipline and Discharge are properly included in this lawsuit. Although Plaintiff checkmarked Demotion, Unequal wages, and arguably Failure to promote, in the section following these designated categories Plaintiff described facts related only to Discipline and Discharge and made no further reference to the remaining three.[3] (Docket #22 at 24-25.) Plaintiff left blank an entire portion of the questionnaire dedicated to the description of employment harm. (*Id.* at 25.)

The Charge of Discrimination accurately represents the discipline about which Plaintiff complained in the intake questionnaire, as well as the discharge allegedly resulting from Plaintiff taking FMLA leave. (Docket #20 at 11.) Again, Plaintiff could have sought amendment, but did not. Plaintiff states, "CCRD prepared the complaint based upon the information provided by Plaintiff." (Docket #34 at 3.) The CCRD cannot be expected to prepare a Charge of Discrimination exceeding the facts as described by Plaintiff.

## II.    *The Intake Questionnaire is not a Charge of Discrimination*

Even if the Court were to find that the intake questionnaire serves as a proper charge in this matter, the intake questionnaire lacks key information necessary to constitute a charge. The law in the Tenth Circuit regarding construction of a "charge" has steadily unfolded over the recent years. Until *Semsroth v. City of Wichita*, 304 F. App'x 707 (10th Cir. 2008), this Circuit had "not resolved what type of document constitutes a charge for the purposes of Title VII." 304 F. App'x at 712. The *Semsroth* Court articulated a three-part test for evaluating whether a document filed with the EEOC

---

[3]Plaintiff's claims in this lawsuit for failure to provide equal training opportunities and harassment are nowhere mentioned in his intake or disability questionnaire.

12

constitutes a charge.⁴ *Id*. at 713 (noting clarification of two points discussed in *Jones*, 502 F.3d at 1183). First, the document must satisfy the requirements of 29 C.F.R. § 1601.12; second, the Court determines "whether a filing constitutes a complainant's request for remedial action from an objective viewpoint only;" and third, the Court does not require evidence that the EEOC actually treated a filing as a charge, but looks to the EEOC's subsequent conduct to evaluate "whether the document can reasonably be construed as a request for agency action." *Id*.

Plaintiff looks to Section 1601.12 in his supplemental response for the premise that "[t]he information provided by Plaintiff to CCRD was clearly sufficient to inform CCRD of "the action and practices complained of." (Docket #34 at 5-6.) The Court concludes that Plaintiff's intake and disability questionnaires fail to meet the requirement set forth in Section 1601.12, that Plaintiff's written statement must have been "sufficiently precise to identify the parties, and to describe generally the action or practices complained of." Plaintiff did not check the mark for national origin as a basis of discrimination, Plaintiff did not describe the facts regarding the alleged employment harms of Demotion, Unequal wages, and Failure to promote (nor failure to provide equal training opportunities or harassment), and Plaintiff's factual statement attached to the intake questionnaire contains no information leading the CCRD to investigate a claim of religious discrimination. Therefore, the Court concludes the scope of the Charge of Discrimination properly governs the scope of this matter.⁵ The Court recommends Plaintiff's Title VII claims for religious and national

---

⁴The Court recognizes that the intake questionnaire in this matter was not directly filed with the EEOC, but the questionnaire served as the foundation for the document created by the CCRD and subsequently submitted to the EEOC. Thus, the Court finds the *Semsroth* analysis appropriately analogous and pertinent to the matter at hand.

⁵As stated, a claim is considered "reasonably related" when "the conduct complained of would fall within the scope of the [administrative] investigation which can reasonably be expected to grow out of the charge that was made." *Id*. (quoting *Deravin v. Kerik*, 335 F.3d 195, 200-01 (2d Cir. 2003)). Plaintiff does not suggest, in either his response or supplemental response, that the

origin discrimination and the ADA and Title VII claims for failure to promote, failure to provide equal training opportunities, unequal pay and harassment be dismissed without prejudice due to failure to properly exhaust administrative remedies.

## CONCLUSION

Accordingly, the Court RECOMMENDS Defendant's Motion for Partial Dismissal of Amended Complaint [filed January 21, 2010; docket #20] be **GRANTED**;[6]

Plaintiff's claims brought pursuant to Section 1981 for religious discrimination and pursuant to the Lily Ledbetter Fair Pay Act be dismissed with prejudice for failure to state a claim; and

Plaintiff's Title VII claims for religious and national origin discrimination and the ADA and Title VII claims for failure to promote, failure to provide equal training opportunities, unequal pay and harassment be dismissed without prejudice for lack of subject matter jurisdiction.

In the interests of clarity and in light of counsel's entry of appearance on behalf of Plaintiff, the Court further recommends Plaintiff be permitted to file a Second Amended Complaint consistent with the terms of the District Court's order on this recommendation, within *five business days* of

---

claims of religious discrimination and failure to promote, failure to provide equal training opportunities, unequal pay and harassment are "reasonably related" to his exhausted claims of race and disability discrimination; thus, the Court does not address this alternate argument.

[6]Be advised that all parties shall have fourteen (14) days after service hereof to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned. Fed. R. Civ. P. 72. The party filing objections must specifically identify those findings or recommendations to which the objections are being made. The District Court need not consider frivolous, conclusive or general objections. A party's failure to file such written objections to proposed findings and recommendations contained in this report may bar the party from a de novo determination by the District Judge of the proposed findings and recommendations. *United States v. Raddatz*, 447 U.S. 667, 676-83 (1980); 28 U.S.C. § 636(b)(1). Additionally, the failure to file written objections to the proposed findings and recommendations within fourteen (14) days after being served with a copy may bar the aggrieved party from appealing the factual findings of the Magistrate Judge that are accepted or adopted by the District Court. *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *In re Garcia*, 347 F. App'x 381, 382-83 (10th Cir. 2009).

the District Court's order.

Dated this 1st day of June, 2010, at Denver, Colorado.

BY THE COURT:

*Michael E. Hegarty*

Michael E. Hegarty
United States Magistrate Judge