IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 09-cv-02595-WYD-MEH

AKEEM ABDUALLAH MAKEEN,

     Plaintiff,

v.

COMCAST OF COLORADO X, LLC,

     Defendant.

---

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

---

     Before the Court are Defendant's Motion for Summary Judgment [filed September 30, 2010; docket #65]; Plaintiff's Motion for Summary Judgment [filed January 3, 2011; docket #176 (sealed #175)]; and Plaintiff's Second Motion for Leave to Amend [filed March 11, 2011; docket #265]. These matters are referred to this Court for recommendation. The motions are fully briefed, and oral argument would not assist the Court in its adjudication. For the reasons stated below and the entire record herein, the Court **RECOMMENDS** Defendant's motion for summary judgment be **GRANTED**; Plaintiff's motion for summary judgment be **DENIED**; Plaintiff's second motion for leave be **DENIED**; and Plaintiff's Amended Complaint be **DISMISSED WITH PREJUDICE**.[1]

---

[1]Be advised that all parties shall have fourteen (14) days after service hereof to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned. Fed. R. Civ. P. 72. The party filing objections must specifically identify those findings or recommendations to which the objections are being made. The District Court need not consider frivolous, conclusive or general objections. A party's failure to file such written objections to proposed findings and recommendations contained in this report may bar the party from a de novo determination by the District Judge of the proposed findings and recommendations. *United States v. Raddatz*, 447 U.S. 667, 676-83 (1980); 28 U.S.C. § 636(b)(1). Additionally, the failure to file written objections to the proposed findings and recommendations within fourteen (14) days after being served with a copy may bar the aggrieved party from appealing the factual findings of the Magistrate Judge that are accepted or adopted by the District Court. *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *In re Garcia*, 347 F. App'x 381, 382-83 (10th Cir. 2009).

## BACKGROUND

### I.  Procedural History

Plaintiff sues his former employer, Comcast of Colorado X, LLC.  Plaintiff is African-American and suffers from epilepsy, which he considers a disability.  Plaintiff believes the Defendant wrongfully terminated his employment on the bases of his race and alleged disability. In his Amended Complaint, Plaintiff brings three claims.  The First Claim asserts violations of the Americans with Disabilities Act ("ADA") and the Family and Medical Leave Act ("FMLA"). (Docket #22 at 3.)  The Second Claim alleges violations of Title VII and 42 U.S.C. § 1981 for racial and religious discrimination, as well as a violation of the Lily Ledbetter Fair Pay Act of 2009.  (*Id*. at 8.)  The Third Claim describes a contention of intentional infliction of emotional distress.  (*Id*. at 13.)  Plaintiff requests reinstatement, damages, and injunctive relief.  (*Id*. at 15.)

Defendant filed a partial motion to dismiss on January 21, 2010, which the District Court granted on September 21, 2010.  (*See* dockets ##20, 62.)  In this Order, the District Court dismissed Plaintiff's claims brought pursuant to Section 1981 for religious discrimination and pursuant to the Lily Ledbetter Fair Pay Act.  The District Court also dismissed Plaintiff's Title VII claims for religious and national origin discrimination, and the claims brought pursuant to the ADA and Title VII for demotion, failure to promote, failure to provide equal training opportunities, unequal pay, and harassment.  (*Id*. at 4.)

The Court construes the remaining claims in Plaintiff's Amended Complaint as follows, in light of the order on the partial motion to dismiss: Claim One) disability discrimination brought pursuant to the ADA and a violation of the FMLA; Claim Two) race discrimination brought pursuant to Section 1981 and Title VII; Claim Three) intentional infliction of emotional distress. (*See* docket #22.)  Defendant seeks summary judgment on all claims.

The Court has, for its consideration, Defendant's Motion for Summary Judgment (docket #65), Plaintiff's Response (docket #71), Plaintiff's Supplemental Response (docket #84), Defendant's Reply (docket #92), Plaintiff's second Supplemental Response (docket #127), Defendant's Surreply (docket #145), Plaintiff's third Supplemental Response (docket #246), Plaintiff's fourth Supplemental Response (docket #253), and Defendant's second Surreply (docket #272).

## II.     Statement of Material Facts

The Court recites the following facts from Defendant's motion and the extensive subsequent briefing.   Where appropriate, the Court has construed the facts in the light most favorable to Plaintiff.   *See Carolina Cas. Ins. Co. v. Yeates*, 533 F.3d 1202, 1204 (10th Cir. 2008).   The Court notes that some facts are considered undisputed, as Plaintiff simply denies the facts and does not offer any evidence to refute Defendant's factual assertions.   *See Simmons v. Potter*, No. 08-cv-02593-WYD-KLM, 2010 WL 3002038, at *1 (D. Colo. July 29, 2010) (court rejecting attempt by plaintiff to create issues of material fact by denying facts without accompanying supportive evidence).   Moreover, the denials accompanied by nothing other than evidentiary support in the form of Plaintiff's own affidavits do not establish a genuine dispute regarding a material fact.   *Murray v. City of Sapulpa*, 45 F.3d 1417, 1422 (10th Cir. 1995) ("conclusory and selfserving affidavits are not sufficient").

Defendant provides cable, entertainment, and communications products and services to cable television, high-speed internet, and phone service customers.  (Docket #64-6 at 1.)  Defendant has enacted certain policies, including an Equal Employment Opportunity Policy, Non-Harassment Policy, Open Door Policy, and Code of Ethics and Business Conduct Policy.  (Docket #64-5 at 1.) All of these policies are available in the company's handbook and are accessible online through the company's internal website.  (*Id.*)

3

Plaintiff began working for Defendant as a full time employee on November 28, 2004. (Docket #64-1 at 9, 111:1-3.) At the time Plaintiff was hired, his title was Senior Network Analyst or Senior Network Engineer Tier 4 Tech 4. (Docket #64-3 at 2.) In early 2007 and as a result of an internal restructuring, Plaintiff's title was changed to Engineer II. Plaintiff's salary was in the range for Engineer II, thus his salary remained the same. (Docket #64-6 at 3.) Shane Portfolio, a Senior Director with Defendant, communicated this information to Plaintiff in person and by memorandum. (*Id*. at 3, 5.) Although on October 21, 2010, Plaintiff affied to never knowing that he was no longer a Senior Network Engineer, Plaintiff identified himself as a "Network Engineer II" in an email dated December 3, 2007. (Docket #92-2 at 4; *see also* docket #74-1 at 1.)

Plaintiff asserts that his supervisor during 2005 through mid-2007, Joe Sandoval, was hostile towards him by yelling at him, cursing in front of him, and slamming things. (Docket #64-1 at 22, 201:22-203:7; 23, 209:19-211:12.) Plaintiff described how "pretty much" everybody at his workplace shared the same issues with Mr. Sandoval. (*Id*. at 23, 211:13-15.) Plaintiff discussed Mr. Sandoval's conduct with Rosa Wood and Kristin Trader, who are employed by Defendant as Human Resources personnel. (Docket #74-2 at 6, 209:7-25.)

Plaintiff has epilepsy, which causes seizures, and takes medication to control the seizures. (Docket #64-1 at 15, 154:22-156:24.) The seizures affect Plaintiff's ability to see, hear, speak, walk, learn, work, lift, and remember. (*Id*. at 16, 160:2-21.) These activities are impacted only when Plaintiff is having a seizure. (*Id*. at 18, 166:9-15.) Plaintiff's last major seizure occurred before his employment with Defendant. (*Id*. at 17, 162:25-163:9.) Plaintiff had not had a seizure within the eighteen months prior to the date of his deposition on July 7, 2010, and could not recall if he has had a seizure in the past two and a half years. (*Id*. at 17, 163:10-24.) Plaintiff had a seizure in November 2007, which was his first "in a while," and "had a couple" while on leave from November 2007 through January 2008. (*Id*. at 18, 167:4-23.) Plaintiff's doctor cleared Plaintiff to return to

4

work for Defendant in January 2008.  (*Id.* at 18, 167:24-168:11.)

Plaintiff was approved for continuous FMLA leave from November 6, 2007 through December 5, 2007 by Defendant on November 9, 2007.  (Docket #64-1 at 33 (FMLA Certification Review).)  The Certification accompanying this approval indicates Plaintiff sought leave as a result of his epilepsy.  (*Id.* at 31-32 (Certification).)  An extension of this continuous leave period was granted by Defendant, extending the leave through January 14, 2007.  (*Id.* at 36.)  Approximately one year later on January 17, 2008, Defendant approved a period of intermittent FMLA leave for Plaintiff dated from January 15, 2008, through June 14, 2008, again for treatment associated with Plaintiff's epilepsy.  (*Id.* at 40-42.)

As part of an employee benefits package, Defendant offers free or discounted "Courtesy Services," including cable television, high speed internet, and phone services akin to those offered to residential customers.  (Docket #64-5 at 2.)  Dynamic (or temporary) Internet Protocol ("IP") addresses are provided to employees and residential customers.  Static IP addresses are provided to commercial customers for commercial websites at a higher cost, as the static IP addresses are permanently assigned to a specific computer.  Any employee of Defendant may purchase a static IP address but must pay the commercial rate for this service.  (Docket #64-6 at 2.)  Defendant offered a static IP product to customers in 2007 and 2008, as it does presently.  (Docket #272-1 at 1.)

Patrick Heimann, an Engineer I with Defendant, informed Shane Portfolio in late October or early November 2007 that he believed Plaintiff was operating a commercial pornography website. (Docket #64-6 at 4.)  Mr. Portfolio passed this information on to Kim White, who was then a Senior Manager for Defendant's Human Resources department.  (*Id.*)  Ms. White passed the information to Defendant's Legal Response Center ("LRC"), which investigates unusual or illegal activities involving Defendant's services.  (*Id.*; *see also* docket #64-4 at 1.)  The LRC commenced an

investigation of the information relayed by Mr. Heimann, and the investigation revealed that a static IP address (usually used for commercial websites) had been assigned to a modem belonging to Plaintiff.  (Docket #64-4 at 1, 4-5 (investigative report dated January 15, 2008).)  The LRC concluded that Plaintiff was receiving the benefit of a statically assigned IP address without paying the higher commercial rate associated with a static address.  (*Id*. at 2.)

As part of the LRC investigation, Mr. Nowicki, a manager in the LRC, and Mr. Mieczkowski, another LRC employee, interviewed Plaintiff by telephone on November 13, 2007, and asked for an explanation regarding the assignment of the static IP address to Plaintiff's modem. (*Id*. at 2, 5)  Plaintiff responded by stating the statically assigned pornographic site was a "test site," but offered no other explanation regarding the static address or why he was not paying for the static address.  (*Id*.)  The interviewers directed Plaintiff to return the static IP address to the pool.  (*Id*.) The IP address was returned within ten minutes of the conclusion of the interview phone call.  (*Id*.)

The LRC is located in New Jersey.  Neither Mr. Nowicki nor Mr. Mieczkowski had ever worked with Plaintiff or knew Plaintiff.  At the time of the investigation, neither Mr. Nowicki nor Mr. Mieczkowski had any knowledge of Plaintiff's race or disability.  (*Id*.)

The LRC shared the results of the investigation with Ms. White, who communicated the results to other Human Resources personnel.  (*Id*.)  Defendant then determined to terminate Plaintiff's employment based on the results of the LRC investigation.  (Docket #64-2 at 7, 29:1-32:10.)  Defendant finalized its decision to terminate Plaintiff's employment on January 31, 2008. (Docket #64-5 at 2, 45 (email indicating approval of termination).)  Defendant planned to implement that decision on Friday, February 1, 2008.  (*Id*. at 2.)  Plaintiff did not report to work on February 1, 2008 (pursuant to the intermittent FMLA leave), thus communication of the termination was delayed to February 4, 2008.  (*Id*.; *see also* docket #64-2 at 4, 17:22-18:20.)

On February 4, 2008, Ms. White and Randy Burke, the Vice President of National Technical Operations, told Plaintiff about the LRC investigation and informed Plaintiff that he was terminated. (Docket #64-2 at 4, 18:2-18:5, 22:6-27:24.)  Ms. White explained to Plaintiff the reason for his termination, which was the assignment of a static IP address to Plaintiff's personal account.  (*Id*. at 5, 23:24-24:7; *see also* docket #22 at 4 (Am. Compl.).)  Mr. Burke then escorted Plaintiff out of the building.  (*Id*. at 6, 25:13-18.)

Plaintiff has no recollection of the details of his termination, other than that it occurred at Defendant's offices.  (Docket #64-1 at 9, 112:21-24; 20, 177:16-179:15 and 180:5-23.)  Plaintiff "ha[s] no idea" as to whether there was a static IP address pointed to his house.  (Docket #64-1 at 20, 180:24; docket #74-2 at 5, 181:1-8.)  Plaintiff attested that he lacks the knowledge and experience to take actions to point a static IP address to his house.  (Docket #74-2 at 181:9-182:2.)  The LRC investigative report indicated that Plaintiff's "position provide[d] access to toolsets and to systems necessary to remove an IP address from the DHCP pool and statically assign it to an account."  (Docket #64-4 at 6.)

Defendant paid Plaintiff through February 5, 2008, and provided Plaintiff with his final paycheck at the time of the termination on February 4, 2008.  (Docket #64-5 at 2; docket #92-4 at 2.) In the Request for Job Separation Information document submitted to Defendant by the Colorado Department of Labor and Employment when adjudicating Plaintiff's request for unemployment insurance benefits, Defendant stated that the last day Plaintiff worked was February 5, 2008. (Docket #74-5 at 1.)  Plaintiff's termination date was coded internally by Defendant as February 5, 2008, because Defendant paid Plaintiff through that date.  (Docket #92-4 at 2.)

On February 4, 2008, after he was informed of his termination, Plaintiff contacted Stephanie Snyder, Human Resources Generalist, and indicated that he needed FMLA leave.  (Docket #64-3 at 3-4.)  Ms. Snyder told Plaintiff that his employment had already been terminated.  (*Id*.)  Also on

that same day, after 5:00 p.m. EST, Plaintiff contacted Defendant's Short Term Disability

administrator and told a representative that he was taking FMLA leave.  (Docket #64-8 at 1; docket

#64-1 at 19, 173:3-11 and 174:10-175:15.)  Plaintiff's claim for Short Term Disability benefits was

denied the following day, February 5, 2008.  (Docket #64-8 at 1.)

## STANDARD OF REVIEW

### I.   Summary Judgment Pursuant to Fed. R. Civ. P. 56

Summary judgment serves the purpose of testing whether a trial is required.  *Heideman v.*

*South Salt Lake City*, 348 F.3d 1182, 1185 (10th Cir. 2003).  The Court shall grant summary

judgment if the pleadings, depositions, answers to interrogatories, admissions, or affidavits show

there is no genuine issue of material fact and the moving party is entitled to judgment as a matter

of law. Fed. R. Civ. P. 56(a).  A fact is material if it might affect the outcome of the suit under the

governing substantive law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The moving

party bears the initial responsibility of providing to the Court the factual basis for its motion and

identifying the pleadings, depositions, answers to interrogatories, and admissions on file, together

with affidavits, if any, which reveal that there are no genuine issues as to any material facts, and that

the party is entitled to summary judgment as a matter of law.  *Celotex Corp. v. Catrett*, 477 U.S. 317,

323 (1986).  The movant may also simply point out to the court "that there is an absence of evidence

to support the nonmoving party's case."  *Celotex Corp.*, 477 U.S. at 325.  The non-moving party

bears the burden of showing that there are issues of material fact to be determined.  *Id.* at 324.

If the movant properly supports a motion for summary judgment, the opposing party may

not rest on the allegations contained in his complaint, but must respond with specific facts showing

a genuine factual issue for trial.  Fed. R. Civ. P. 56(e); *Hysten v. Burlington Northern & Santa Fe*

*Ry.*, 296 F.3d 1177, 1180 (10th Cir. 2002).  These specific facts may be shown "'by any of the kinds

of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves.'"  *Pietrowski*

*v. Town of Dibble*, 134 F.3d 1006, 1008 (10th Cir. 1998) (quoting *Celotex*, 477 U.S. at 324). "[T]he content of summary judgment evidence must be generally admissible and ... if that evidence is presented in the form of an affidavit, the Rules of Civil Procedure specifically require a certain type of admissibility, i.e., the evidence must be based on personal knowledge." *Bryant v. Farmers Ins. Exch.*, 432 F.3d 1114, 1122 (10th Cir. 2005). "The court views the record and draws all favorable inferences in the light most favorable to the non-moving party." *Pepsi-Cola Bottling Co. of Pittsburg, Inc. v. Pepsico, Inc.*, 431 F.3d 1241, 1255 (10th Cir. 2005).

## II.    Treatment of a *Pro Se* Plaintiff's Complaint

A federal court must construe a *pro se* plaintiff's "pleadings liberally, applying a less stringent standard than is applicable to pleadings filed by lawyers. [The] court, however, will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on plaintiff's behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (quotations and citations omitted). The Tenth Circuit interpreted this rule to mean, "if the court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so despite the plaintiff's failure to cite proper legal authority, his confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). However, this interpretation is qualified in that it is not "the proper function of the district court to assume the role of advocate for the *pro se* litigant." *Id.*; *see also Peterson v. Shanks*, 149 F.3d 1140, 1143 (10th Cir. 1998) (citing *Dunn v. White*, 880 F.2d 1188, 1197 (10th Cir. 1989)).

## ANALYSIS OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Viewing the evidence in the light most favorable to the Plaintiff, this Court finds that Plaintiff fails to show a genuine issue of material fact which would allow this case to properly proceed to trial. The crux of the matter is whether the termination of Plaintiff's employment was

a pretext for discrimination based on Plaintiff's race or alleged disability (or some other illegal consideration).   The Court concludes that Defendant's proffered reason for termination was legitimate and non-discriminatory, and Plaintiff does not meet his burden of demonstrating that Defendant's stated reason for his termination was not held in good faith at the time of discharge.

## I.      Effect of the State Administrative Decisions

Before the Court evaluates Plaintiff's substantive claims, the Court addresses the legal effect and weight of the Colorado Department of Labor and Employment Hearing Officer's April 2008 decision and the Colorado Civil Rights Commission's July 2009 determination.[2] Plaintiff frequently cites to both in opposing the motion for summary judgment, as evidence and as part of a collateral estoppel argument.

First, the United States Supreme Court has held that unreviewed state administrative proceedings have no preclusive effect on a federal discrimination lawsuit. *University of Tennessee v. Elliott*, 478 U.S. 788, 796 (1986).   Rather, Congress intended a plaintiff to have a trial de novo on these claims when the claimant goes into federal court. *Id.*

Defendant compares the Colorado Civil Rights Commission's July 2009 determination to an EEOC letter of determination as evaluated by the Tenth Circuit in *Simms v. Oklahoma*, 165 F.3d 1321, 1331 (10th Cir. 1999).   The *Simms* plaintiff emphasized the EEOC's favorable letter of determination regarding his race-based discrimination claim. *Id.* The court found that "when the

---

[2]The Colorado Department of Labor and Employment Hearing Officer, in an April 2008 administrative decision regarding Plaintiff's entitlement to unemployment insurance benefits, concluded that Plaintiff did not have access to the technology required for assigning a static IP address for his personal use, nor was Plaintiff aware that he had a static IP address. (Docket #74-3 at 1.) The Hearing Officer was persuaded that Plaintiff "did not do that for which he allegedly was discharged." (*Id*. at 2.)  In a Determination dated July 21, 2009, the Colorado Civil Rights Commission concluded that Defendant "did not have sufficient information to determine that [Plaintiff] assigned a static IP address to his account, or in any case did not submit such information to either the Division or the Colorado Department of Labor Employment." (Docket #74-4 at 7.)

independent facts before the district court judge fail to establish a genuine issue of material fact, a favorable EEOC letter of determination does not create one." *Id*. Similarly in this matter, the Court adjudicates the motion for summary judgment based on the presentation of independent facts by both sides, where relevant and admissible. As stated below, the Court concludes that Plaintiff fails to establish a genuine issue of material fact based on this independent evaluation, and like *Simms*, the Colorado Civil Rights Commission's determination does not create one.

Second, even under state law, the decisions relied upon by Plaintiff are not binding on this Court. Defendant cites to Colo. Rev. Stat. § 8-74-108 for the proposition that the Hearing Officer's decision is "not conclusive or binding on this Court, and may not be used as evidence in this matter." (Docket #92 at 5.) The Court agrees. Colo. Rev. Stat. § 8-74-108 precludes the use of a Hearing Officer's decision regarding unemployment insurance benefits as "conclusive or binding or used as evidence in any separate or subsequent action or proceeding in another forum," other than proceedings under the same title, which is inapplicable here. This is "regardless of whether the prior action was between the same or related parties or involved the same facts." Colo. Rev. Stat. § 8-74-108 (West 2011). Accordingly, the Court disregards the facts and arguments arising from the April 2008 unemployment benefits decision.

## II.    Title VII, ADA, and FMLA

Where a plaintiff such as this Plaintiff relies on circumstantial evidence, judicial evaluations of claims brought pursuant to Title VII, the ADA, and FMLA abide by the *McDonnell Douglas* burden shifting analysis, shifting the burden of production from plaintiff to defendant and back to plaintiff. *Hyden v. Ford Motor Credit Co.*, No. 06-cv-01970-WYD-CBS, 2008 WL 1775276, at *3 (D. Colo. Apr. 14, 2008) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973) (Title VII burden shifting)); *see also Morgan v. Hilti, Inc.*, 108 F.3d 1319, 1323 (10th Cir. 1997) (recognizing precedent applying *McDonnell Douglas* burden shifting analysis to ADA and FMLA

retaliation claims).  Plaintiff must first prove a prima facie case of discrimination.  *Garrett v. Hewlett-Packard Co.*, 305 F.3d 1210, 1216 (10th Cir. 2002).  The burden then shifts to Defendant to produce a legitimate, non-discriminatory reason for its actions.  *Id.*  "If the defendant does so, the plaintiff must either show that his race, age, gender, or other illegal consideration was a determinative factor in the defendant's employment decision, or show that the defendant's explanation for its action was merely pretext."  *Id.*

Plaintiff asserts that he was subject to an "adverse employment action" (here, termination) because of his race.  (Docket #22 at 9.)  Plaintiff states that Defendant subjected him to less favorable treatment than non-African-American employees.  (*Id.* at 11.)  In relevant part, Title VII provides that is unlawful for an employer to discharge or otherwise discriminate against an individual on the basis of his race.  42 U.S.C. § 2000e-2(a)(1).  A prima facie case of race discrimination must consist of evidence that: (1) Plaintiff is a member of a protected class, (2) Plaintiff suffered an adverse employment action, and (3) the challenged action took place under circumstances giving rise to an inference of discrimination.  *E.E.O.C. v. PVNF, L.L.C.*, 487 F.3d 790, 800 (10th Cir. 2007).

Plaintiff claims that Defendant denied him "equal terms and conditions of employment" because of his medical condition, in violation of the ADA.  (Docket #22 at 6.)  The ADA provides that is unlawful for an employer to discharge or otherwise discriminate against a qualified individual on the basis of his disability.  42 U.S.C. § 12112(a).  To establish a prima facie case under the ADA, a plaintiff must demonstrate:

> (1) that [he] is a disabled person within the meaning of the ADA . . .; (2) that [he] is qualified, that is, [he] is able to perform the essential functions of the job, with or without reasonable accommodation . . .; and (3) that the employer terminated [his] employment under circumstances which give rise to an inference that the termination was based on [his] disability.

*Morgan*, 108 F.3d at 1323.

Plaintiff further alleges that Defendant impermissibly discharged him because he took leave pursuant to the FMLA.  (Docket #22 at 3-4.)  Courts have recognized two theories for recovery arising from FMLA claims: the retaliation or discrimination theory and the entitlement or interference theory.  *Schafer v. Reg. Transp. Dist.*, No. 07-cv-00340-WYD-KLM, 2008 WL 1898698, at *5 (D. Colo. Apr. 28, 2008) (citing *Smith v. Diffee Ford-Lincoln-Mercury, Inc.*, 298 F.3d 955, 960 (10th Cir. 2002)).  Here, the Court construes Plaintiff's FMLA claim as under the retaliation or discrimination theory.  This theory arises from Section 2615(a)(2) of 29 U.S.C., providing that "[i]t shall be unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by this subchapter."  To demonstrate a prima facie case of FMLA discrimination/retaliation, Plaintiff must show: 1) he engaged in a protected activity (such as seeking or taking FMLA leave); 2) Defendant "took an action that a reasonable employee would have found materially adverse;" and 3) the protected activity and the adverse action are causally connected.  *Metzler v. Fed. Home Loan Bank of Topeka*, 464 F.3d 1164, 1171 (10th Cir. 2006).

Defendant concedes that Plaintiff presents a prima facie case under Title VII and pursuant to the FMLA.  (Docket #64 at 12, 20.)  On the contrary, in regards to Plaintiff's ADA claim, Defendant asserts that Plaintiff's alleged disability is not a disability within the meaning and purpose of the ADA.  (*Id.* at 16.)  However, assuming Plaintiff states a prima facie case of discrimination based on his race under Title VII, his rights pursuant to FMLA, and his asserted disability (epilepsy) under the ADA,  Defendant has proffered a legitimate non-discriminatory reason for termination, and Plaintiff does not refute it with much other than his own self-serving conclusory affidavits.  As further explained below, Plaintiff's affidavits (and other presented documents) do not demonstrate a triable issue exists as to whether, at the time of the termination, Defendant's sincerity regarding the reason for termination was questionable.

Under the *McDonnell Douglas* burden shifting analysis, "[o]n summary judgment, once the employer comes forward with a facially nondiscriminatory reason for an adverse employment decision, the plaintiff's burden is only to demonstrate a genuine dispute of material fact as to whether the proffered reasons were unworthy of belief." *Morgan*, 108 F.3d at 1321 (citation omitted). "The correct inquiry is whether or not, at the time of termination, 'there was any dispute or a genuine issue concerning the sincerity of defendant['s] proffered reason for [p]laintiff's termination." *Palmer v. Denver Health Med. Center*, No. 05-cv-00082-WYD-MEH, 2007 WL 1287834, at *5 (D. Colo. April 30, 2007) (citing *McKnight v. Kimberly Clark Corp.*, 149 F.3d 1125, 1129 (10th Cir. 1998)).

In evaluating a plaintiff's assertion of pretext, the Court "requires a showing that the tendered reason for the employment decision was not the genuine motivating reason, but rather was a disingenuous or sham reason." *McKnight*, 149 F.3d at 1129. "Pretext can be shown by 'such weaknesses, implausibilities, inconsistences, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable fact finder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted non-discriminatory reasons.'"[3] *Morgan*, 108 F.3d at 1323 (citation omitted). The Tenth Circuit identified three ways in which a plaintiff may show pretext on part of the defendant: "(1) with evidence that the defendant's stated reason for the adverse employment action was false . . . ; (2) with evidence that the defendant acted contrary to a written company policy . . . ; or (3) with evidence that the defendant acted contrary to an unwritten policy . . . when making the adverse employment decision . . . ." *Plotke v. White*, 405 F.3d 1092, 1102 (10 th Cir. 2005) (citation omitted).

---

[3] Plaintiff "need not demonstrate that discriminatory reasons motivated the employer's decision." *Morgan*, 108 F.3d at 1321-22.

In essence, Plaintiff offers five primary arguments regarding the allegedly pretextual nature of the termination decision.  Plaintiff asserts: 1) the timing of the LRC investigation in light of his intermittent FMLA leave indicates pretext (docket #127 at 6; docket #246 at 9, 15; docket #253 at 2); 2) Defendant changed its reasons for the termination and the date of the termination in order to conceal its impermissible motives for the termination (docket #74 at 10-11; docket #246 at 4, 6, 13, 14); 3) Plaintiff did not have the knowledge, equipment, or access to utilize a static IP address (docket #74 at 11-12; docket #243 at 1; docket #246 at 15-16); 4) Defendant did not have a static IP address available in Colorado until 2008 (docket #246 at 2, 12, 14; docket #253 at 1); and 5) Defendant has failed to provide evidence proving that there was a static IP address assigned to Plaintiff's account for which Plaintiff was not paying (docket #246 at 5, 10).  The Court addresses each in turn.

### A.   *Timing of Termination and FMLA Intermittent Leave*

Plaintiff believes that the timing of the LRC investigation as well as the actual termination during his use of approved FMLA intermittent leave indicates pretext.  Defendant "does not dispute that Plaintiff was entitled to FMLA leave," but points out correctly that, although at the time of his termination Plaintiff had been approved for intermittent FMLA leave, he was not taking leave on the day his employment was terminated.  (Docket #64 at 20.)

"Temporal proximity between protected conduct and termination [is] relevant evidence of a causal connection sufficient to 'justify an inference of retaliatory motive.'" *Metzler v. Fed. Home Loan Bank of Topeka*, 464 F.3d 1164 , 1171 (10th Cir. 2006).  However, temporal proximity does not excuse a plaintiff from demonstrating pretext.  *Metzler*, 464 F.3d at 1172.  Plaintiff must "present evidence of temporal proximity plus circumstantial evidence of retaliatory motive."  *Id*. (citations omitted).

Here, Plaintiff presents his own testimony as circumstantial evidence of a policy against taking FMLA leave, represented by supervisors employed by Defendant.  (Docket #74 at 7 (citing to Plaintiff's deposition transcript).)  Plaintiff asserts that his supervisors, Mr. Mlcoch and Mr. Portfolio, both "stated that no one else in his group would be given FMLA leave after one to [sic] the employees that Portfolio supervised was granted and used FMLA leave."  (*Id*.)  Plaintiff contends that supervisors employed by Defendant oppose the use of FMLA leave by employees. (*Id*.)

Defendant countered this testimony with affidavits by Mr. Mlcoch and Mr. Portfolio indicating that they did not make such statements, and, in any event, neither person was involved "in any decision regarding Plaintiff's FMLA leave or that of any other employee; the investigation of Plaintiff's suspected misconduct; or the decision to terminate Plaintiff's employment."  (Docket #92 at 3.)  Defendant explains that Plaintiff could not "identify any other management employees who made similar comments, even when specifically asked to do so."  (*Id*. at 4 (citing to Plaintiff's deposition transcript).)

"Under FMLA, an employee who requests leave or is on leave has no greater rights than an employee who remains at work."  *Gunnell v. Utah Valley State College*, 152 F.3d 1253, 1262 (10th Cir. 1998).  Thus, an employee on (or here, off of intermittent) FMLA leave "would have no greater protection against his or her employment being terminated for reasons not related to his or her FMLA request than he or she did before submitting the request."  *Gunnell*, 152 F.3d at 1262. Defendant must prove that Plaintiff "would have been dismissed regardless of the employee's request for, or taking of, FMLA leave."  *Metzler*, 464 F.3d at 1180.

Even if Mr. Mlcoch (or Mr. Portfolio, even though Plaintiff did not identify Mr. Portfolio as the source of these comments during his deposition (*see* docket #74-2 at 3-4)) said what Plaintiff claimed during his deposition, Defendant nonetheless has proven that Plaintiff would have been

dismissed whether he was approved for intermittent FMLA leave or not, as further explained below. Defendant demonstrates that Plaintiff was terminated for the use of a static IP address without paying for it, and Plaintiff fails to meet his evidentiary burden to the contrary.  The temporal proximity of his FMLA leave and the termination is not enough to withstand summary judgment.

### B.      Reason for and Date of Termination

In his Amended Complaint, Plaintiff acknowledges that when he asked for the reason he was terminated, he was told, "for violation of conduct and code of ethics . . . [Plaintiff] had configured a static route on a server and had it pointing to his house." (Docket #22 at 4.)  Notwithstanding this original position, Plaintiff now argues that Defendant changed its stated reasoning during the Colorado Department of Labor and Employment Hearing.  (Docket #246 at 14.)  As explained above, the Court disregards the Hearing Officer's decision in its adjudication of this motion for summary judgment.  In any event, it appears to the Court that Defendant's position has remained consistent: evidence indicated Plaintiff was using a commercial product (that happened to be related to an allegedly pornographic website) and not paying for it, thus Defendant decided to terminate his employment.

The issue regarding the date of termination is no different.  Plaintiff attempts to create an inconsistency in Defendant's story, and Defendant proffered a reasonable explanation, supported by the evidence, that although Plaintiff's employment was terminated on February 4, 2008, the decision to do so was finalized on January 31, 2008, and Plaintiff was paid through February 5, 2008, which is why certain records indicate employment through February 5, 2008.  The arguments presented by Plaintiff are nothing more than red herrings and do not sway the Court that summary judgment is inappropriate.

### C.      The Static IP Address

The static IP address is the crux of Plaintiff's arguments that Defendant's termination of his employment was merely pretext for discriminatory reasons based on his race, alleged disability and use of FMLA leave.  Plaintiff contends that he did not have the knowledge, equipment, or access to utilize a static IP address (docket #74 at 11-12; docket #243 at 1; docket #246 at 15-16); Defendant did not have a static IP address service in Colorado until 2008 (docket #246 at 2, 12, 14; docket #253 at 1); and Defendant has failed to provide evidence proving that there was a static IP address assigned to Plaintiff's account for which Plaintiff was not paying (docket #246 at 5, 10).

"A challenge of pretext requires [the Court] to look at the facts as they appear to the person making the decision to terminate plaintiff." *Metzler*, 464 F.3d at 1179.  The Court therefore reviews the conclusions memorialized in the LRC investigative report and explained in Mr. Nowicki's affidavit, as well as the email thread regarding Defendant's decision to terminate.[4]  The LRC commenced the investigation after receiving notice from Ms. White (based on the information from Mr. Heimann) that Plaintiff was possibly misusing Defendant's services.  (Docket #64-4 at 1.)  The persons who conducted the investigation, Mr. Nowicki and Mr. Mieczkowski, at the time did not know Plaintiff and did not know his race or about his alleged disability.  (*Id*. at 2.)  The LRC report indicated that the IP address associated with "a pay website for pornographic material" was verified "through a reverse DNS look up" and discovered through "the local CMTS" to be "assigned to an Arris CDV modem on the account of Akeem Makeen." (*Id*. at 4.)  The investigators then contacted Plaintiff by telephone, who has no memory of the conversation.  The investigators recount in the LRC report that Plaintiff did not deny his use of the static IP address and "stated the site was not commercial but a 'test' account with no working links." (*Id*. at 5.)  The address was then returned

---

[4]These documents are admissible pursuant to Fed. R. Civ. P. 56(c).

to the appropriate pool within ten minutes of the investigators' conversation with Plaintiff.  (*Id.*)

The 30(b)(6) deposition designee for Defendant, Mr. Randal Burke, explained that a conference call was held including him, Ms. White, Ms. Field, and perhaps Ms. Woods, to review the LRC report and to decide whether to terminate based on the investigation's conclusions. (Docket #64-2 at 7, 30:2-18.)  Mr. Burke attested that "it was very straightforward" to make the decision "to move forward with termination." (*Id.* at 7, 31:25-32:10.)  An email string amongst Mr. White, Ms. Woods, Emily Bland, and Lysa Dahlin, the Vice President of Human Resources and Organizational Effectiveness for Defendant, demonstrates that the decision to terminate based on the results of the LRC investigation was finalized on January 31, 2008, after Ms. White obtained approval for the termination from Ms. Dahlin. (Docket #64-5 at 1-2, 45-48.)  It appears to the Court to be undisputed that, at the time of the termination, the tendered reason for termination was indeed the genuine motivating reason and not a cover-up for an improper sham motivation.

Even if the Court were to engage in a post-hoc evaluation of the stated reason for termination, Plaintiff's three arguments related to the static address lack merit.[5]  The record indicates that Defendant offered a static IP product to customers in 2007 and 2008, and during that time, "it was possible to statically assign an IP address to an account." (Docket #272-1 at 1 (Mlcoch Aff.).) Furthermore and contrary to Plaintiff's suggestion, the LRC concluded that he did, in fact, due to his position and experience, have the ability and access "to remove an IP address from the DHCP pool and statically assign it to an account." (Docket #64-4 at 6.)

---

[5]Notably, Plaintiff could have demonstrated pretext by showing that similarly-situated non-protected-class employees engaged in the same misconduct and were treated more favorably. *See Smith v. Wellpoint, Inc.*, 2010 WL 3075579, at *4 (D. Colo. Aug. 5, 2010) (citing *Swackhammer v. Sprint/United Mgmt. Co.*, 493 F.3d 1160, 1167-68).  Under this approach, Plaintiff must establish that the similarly-situated non-protected-class employee "was subject to the same work rules, the same supervisor, had a similar work history, and transgressed a work rule of 'comparable seriousness' to that violated by [Plaintiff]." *Id.* (citation omitted).  Plaintiff has made no such showing.

Regarding the supposed lack of evidence supporting the LRC's conclusion, as this Court explained in its adjudication of Plaintiff's motion for sanctions, even if the logs recording IP address activity existed intact and demonstrated that the static IP address ultimately was not assigned to Plaintiff by Plaintiff, the logs were not considered in the investigation and subsequent termination of Plaintiff's employment with Defendant. (*See* docket #272-4 at 2-3 (Nowicki Aff.).) "A mistaken belief can be a legitimate reason for an employment decision and is not necessarily pretextual." *E.E.O.C. v. Flasher Co., Inc.*, 986 F.2d 1312, 1322 n.12 (10th Cir. 1992). "A reason honestly described but poorly founded is not a pretext, as that term is used in the law of discrimination . . . . Bad or mistaken reasons for a decision may yet be non-discriminatory." *Pollard v. Rea Magnet Wire Co., Inc.*, 824 F.2d 557, 559 (7th Cir. 1987).

Similar to the *McKnight* plaintiff, the Court finds that in this case, Plaintiff "has not shown that at the time of his termination there was any dispute or a genuine issue concerning the sincerity of defendant['s] proffered reason for his termination." 149 F.3d at 1129. "An articulated motivating reason is not converted into pretext merely because, with the benefit of hindsight, it turned out to be a poor business judgment. . . . The test is good faith belief." *Id*. (internal citation omitted). Review of the LRC report demonstrates that Defendant relied upon a CMTS report indicating that the address was assigned to a cable modem belonging to Plaintiff. This assignment was confirmed by another LRC employee, Chris Ryan. (*See* docket #64-4 at 4-5; docket #272 at 9.) The interview with Plaintiff at that time seemed to further confirm the assignment, as Plaintiff did not deny the inquiry but verified it by his explanation that it was a "test" site. Thus, it appears to the Court that not only was the reason for termination honestly described but also the reason was not a mistake, based on the information known at the time of the investigation and the subsequent termination decision.

The Court concludes that  Defendant presented a legitimate, non-discriminatory reason for the termination, and Plaintiff fails to demonstrate a genuine dispute of material fact as to whether the stated reasons for termination were (or presently, are) unworthy of belief.  Therefore, the Court finds that Defendant is entitled to summary judgment in its favor on Plaintiff's Title VII, FMLA, and ADA discrimination claims.[6]

## III.    Section 1981 Racial Discrimination and Harassment

The standard for proving a violation of 42 U.S.C. § 1981 is the same as that for proving a violation of Title VII.  *Crowe v. ADT Sec. Servs., Inc.*, — F.3d — , 2011 WL 1532536, at *3 (10th Cir. 2011).  Plaintiff may prove a Section 1981 violation either through direct evidence or through the *McDonnell Douglas* burden shifting framework.  *Id*.  As concluded above, the Court finds that Plaintiff does not establish illegal or otherwise improper motive for the termination of his employment.  However, Plaintiff asserts a number of other adverse employment actions for the Court to consider.

In the Amended Complaint, Plaintiff claims that Defendant excluded Plaintiff from training opportunities, disciplined him differently than other similarly-situated employees, paid him less than other similarly-situated employees, and fostered "an atmosphere of racial intolerance and racial harassment" against him, all on the basis of his race and in violation of Section 1981.  (Docket #22

---

[6]To briefly address Plaintiff's vague references regarding a reasonable accommodation, this claim lacks merit under the same analysis.  When asked what accommodation Defendant should have provided, Plaintiff, in his deposition, stated "[e]qual pay, equal training, same work environment, same work hours, same training, and the same equal protection to be able to take it without being terminated."  (Docket #64-1 at 24, 215:24-216:13.)  This conclusory assertion, unsupported by any evidence in the record, fails to overcome the above conclusion that the termination of his employment was based on a legitimate, non-discriminatory reason.  Moreover, Plaintiff's contention that Defendant was obligated to reasonably accommodate him by approving his application for short-term disability on February 4, 2008, also fails, as Plaintiff's employment was terminated before he made the request.  (*See* docket #64-3 at 3-4; docket #64-8 at 1; docket #64-1 at 19, 173:3-11 and 174:10-175:15.)

at 9-12.) The Court addresses each in turn.

      **A.**    ***Training Opportunities***

Plaintiff contends that he was ordered to attend a week of training in Philadelphia, PA, but spent the week "performing maintenances instead of attending the training class." (Docket #22 at 8.) Plaintiff alleges that the non-African American employees were able to attend the training. (*Id.*) Defendant counters this claim, explaining that during training sessions on two separate occasions, Plaintiff was treated similarly to other Caucasian employees. (Docket #64 at 6.) First, regarding the Philadelphia training, Defendant contends that neither Plaintiff nor the one other employee from Denver in attendance (who was Caucasian) completed the training, because one became sick and Plaintiff had other ongoing work obligations as well as a personal reason for leaving the training early. (*Id.*; *see also* docket #64-1 at 4-5.) During the second training opportunity, Plaintiff and another employee who was Caucasian "covered the floor" while other employees were in training. (*Id.*; *see also* docket #64-1 at 4, 37:9-39:2.) These facts show the Court that Plaintiff was treated the same as the other Caucasian employee in each situation.

Plaintiff presents only his own affidavits in support of his contention that he requested training that was not provided. (Docket #84 at 3; docket #127 at 5; docket #246 at 4.) Plaintiff does not offer any evidence indicating that the training not provided to him was provided to other similarly situated non-protected-class employees who requested the same. The Court finds that Plaintiff fails to meet his burden of articulating specific facts supported by the record demonstrating a triable issue. *See Sydney v. ConMed Elec. Surgery*, 275 F. App'x 748, 755 (10th Cir. 2008) ("In the absence of disparate treatment, evidence of inadequate training does not by itself raise an inference of pretext."). Therefore, the Court finds Defendant is entitled to summary judgment regarding the allegations of failure to train based on improper racial motivation.

### B.       *Discriminatory Discipline*

Plaintiff asserts that, in May 2006, he corrected a problem by applying certain company policy and was reprimanded.  (Docket #22 at 8-9.)  Plaintiff states that a similarly situated non-African American employee did the same, but was not reprimanded.  (*Id*. at 9.)  Further, Plaintiff contends that he had to submit his work to subordinate co-workers for their review, and none of his colleagues had to do so.[7]  (*Id*.)  Plaintiff presents no evidence in support of these claims.

Defendant cites to Tenth Circuit precedence analyzing disparate discipline under Title VII. (Docket #64 at 15.)  "A prima facie case of disparate discipline may be established if the plaintiff proves by a preponderance of the evidence that (1) the plaintiff is a racial minority, (2) the plaintiff was disciplined by the employer, and (3) the employer imposed the discipline under circumstances giving rise to an inference of racial discrimination."  *Jones v. Denver Post Corp.*, 203 F.3d 748, 753 (10th Cir. 2000).  Defendant asserts that Plaintiff can provide no evidence indicating the discipline was imposed under circumstances giving rise to an inference of racial discrimination or that the discipline was pretextual.  (Docket #64 at 15.)

In the adjudication of a motion for summary judgment, the moving party may simply point out to the Court "that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp.*, 477 U.S. at 325.  Defendant has done so, supported by the Corrective Discipline Memorandum regarding the 2006 incident.  (*See* docket #64-7.)  Plaintiff, as the non-moving party,

---

[7]In Plaintiff's Third Supplemental Response, he references a verbal warning issued by Joe Sandoval requiring Plaintiff "to know all transport gear from Qwest to AT&T to Cchange to CDV . . . ."  (Docket #246 at 4.)  In support of this contention, Plaintiff cites to Exhibit J attached to his motion for summary judgment.  (*Id*.)  The Court reviewed this exhibit, which is an email string referring to Plaintiff leaving a training due to his mother's illness.  (*See* docket #175 at 55-56.)  The email does not support Plaintiff's allegation about a verbal warning.  The Court "will not search the record in an effort to determine whether there exists dormant evidence which might require submission of the case to a jury."  *Gross v. Burggraf Constr. Co.*, 53 F.3d 1531, 1546 (10th Cir. 1995) (citation omitted).

then bears the burden of showing that there are issues of material fact to be determined; these issues must be supported by evidence other than the pleadings themselves or conclusory and self-serving affidavits.  *See id*. at 324.  Plaintiff has failed to do so regarding his assertion of discriminatory discipline, thus the Court determines that Defendant is entitled to summary judgment on this claim.

### C.      *Unequal Pay*

Plaintiff believes that during the 2007 restructuring, Defendant did not adjust his pay to the lowest pay rate for his newly designated position.  (Docket #22 at 9.)  Plaintiff contends that Defendant adjusted the pay of all other non-protected-class employees holding the same title.  (*Id*.)

At the time Plaintiff was hired, his title was Senior Network Analyst or Senior Network Engineer Tier 4 Tech 4.  (Docket #64-3 at 2.)  As a result of the early 2007 internal restructuring, Plaintiff's title was changed to Engineer II.  Defendant attests that Plaintiff's salary was in the range for Engineer II, thus his salary remained the same.  (Docket #64-6 at 3.)  The Personal Compensation Statement issued under the auspices of the restructuring indicates that the salary range for the Engineer II position was $61,300 - $91,900.  (*Id*. at 5.)  Plaintiff's salary was set at $64,504.96, which is within the designated range.  (*Id*.)

Plaintiff presents little other than his own conclusory statements that other Engineer II employees were paid more than him.  In his third supplemental response, Plaintiff refers to Exhibits E-G included with his motion for summary judgment to support his assertion that another employee, Matt Moore, was paid more than him.  (Docket #246 at 3.)  Exhibit E is an employee performance review form evaluating Plaintiff (docket #175 at 42 (scoring a 2.7 out of 4)); Exhibit F is a spreadsheet without any accompanying explanation (*id*. at 50 (notably, the number associated with Plaintiff is the same for Mr. Moore)); and Exhibit G is a "Merit Confirmation Shee" [sic] indicating that Plaintiff's salary was increased by $1,264.80 on February 25, 2007 (*id*. at 51).  These documents do not support Plaintiff's position.  The Court finds that Plaintiff fails to meet his burden of showing

an issue of material fact remains to be tried regarding unequal pay, thus summary judgment is appropriate for Defendant on this claim.

> **D.      Racial Harassment**

In order to withstand summary judgment on a Section 1981 harassment claim, Plaintiff must show "that a rational jury could find that the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Faragalla v. Douglas Cnty. Sch. Dist. RE 1*, Nos. 09-1393, 10-1433, 2011 WL 94540, at \*9 (10th Cir. 2011) (unpublished) (citing *Sandoval v. City of Boulder*, 388 F.3d 1312, 1327 (10th Cir. 2004)).  Furthermore, "the harassment must be based on the plaintiff's protected class or stem from discriminatory animus toward [his] protected class." *Faragalla*, 2011 WL 94540, at \*9 (citation omitted).  Plaintiff must demonstrate "more than a few isolated incidents of racial enmity;" he must establish the occurrence of "a steady barrage of opprobrious racial comments*." Bolden v. PRC Inc.*, 43 F.3d 545, 551 (10th Cir. 1994).

Throughout the filings, Plaintiff refers to certain incidents as harassing.  In the Amended Complaint, Plaintiff simply asserts that Defendant fostered "an atmosphere of racial intolerance and racial harassment against him because of his race," but does not give further details.  (Docket #22 at 10.)  In his deposition, Plaintiff referred to Mr. Sandoval's conduct as hostile towards him, but then stated that "pretty much" everybody at his workplace shared the same issues with Mr. Sandoval.  (Docket #64-1 at 22, 201:22-203:7; 23, 209:19-211:15.)  Plaintiff mentions a meeting with Ms. Trader, who is the director Defendant's Human Resources department, about alleged discrimination.  (Docket #246 at 3.)  Review of the notes from that meeting indicate that the complained-of discrimination was "reverse" and based on gender; that is, Plaintiff complained that guards were not asking for female employees' ID badges but did request male employees to show

their badges.[8]  (Docket #175-2 at 20-21; *see also* docket #272 at 4, docket #272-3 (Trader Aff.).)

In his third supplemental response, Plaintiff, for the first time, describes an allegation that Reggie Simmons (who the Court assumes is also employed by Defendant), was extorting money from Plaintiff.  Plaintiff cites to Exhibits K, L, and M to his motion for summary judgment as evidence of this extortion.  Exhibit K is an email about "migrations" (docket #175 at 57); Exhibit L is an email from Mr. Portfolio to Plaintiff telling him he is "doing a great job" (*id*. at 59); Exhibit M is an email from Yiu Lee to Plaintiff thanking him for help on a project (*id*. at 60).  These exhibits do not support Plaintiff's contention.  Again, the Court "will not search the record in an effort to determine whether there exists dormant evidence which might require submission of the case to a jury."  *Gross*, 53 F.3d at 1546.

Defendant provides an affidavit from Mr. Mlcoch explaining that Plaintiff "never paid for any business or other trips for [him] or, to [his] knowledge, Reggie Simmons."  (Docket #145-6 at 2.)  In any event, Reggie Simmons is also African American, and there is no indication that even if Plaintiff did pay for a business trip (which seems unlikely), such harassment (if it could be classified as harassment) was motivated by a racial animus.  (*See* docket #272 at 10.)  Plaintiff fails to meet his burden of establishing a "steady barrage of racial opprobriousness."  Nothing in these allegations, in the face of Defendant's proffered explanations and evidence, indicates harassment to the extent required for a Section 1981 cause of action.  Therefore, the Court finds that no genuine dispute of material fact exists as to this claim, and Defendant is entitled to summary judgment in its favor.

---

[8]The Court notes that Plaintiff includes a number of emails as exhibits to his motion for summary judgment that are out of time.  "The statute of limitations applicable to employment discrimination claims under 42 U.S.C. § 1981 is four years."  *Robinson v. Dean Foods Co.*, No. 08-cv-01186-REB-CBS, 2009 WL 723329, at *2 (D. Colo. Mar. 18, 2009) (citation omitted).  This lawsuit was filed on November 4, 2009; therefore, any occurrence before November 4, 2005, is outside of the limitations period.

### IV.      Intentional Infliction of Emotional Distress

Plaintiff's claim of intentional infliction of emotional distress relies on the above-stated claims.  (*See* docket #22 at 13-14.)   As explained herein, the Court concludes that Defendant's reason for terminating Plaintiff's employment was legitimate and non-discriminatory.  Furthermore, the Court determines that the adverse employment actions alleged by Plaintiff pursuant to Section 1981 lack merit.   Accordingly, there is no basis upon which the Court could find that Plaintiff presents specific facts showing a genuine triable issue regarding his assertion of intentional infliction of emotional distress; thus, Defendant is entitled to summary judgment in its favor on this claim as well.  *See also Yarbrough v. ADT Sec. Servs., Inc.*, No. 07-cv-01564-LTB-KMT, 2008 WL 3211284, at *8 (D. Colo. Aug. 6, 2008) (unpublished) ("a mere allegation by an employee that he or she was dismissed wrongfully fails to state a claim for intentional infliction of emotional distress." (citations omitted)).

### V.      Conclusion

Plaintiff believes Defendant wrongfully terminated his employment as a discriminatory act based on his race, asserted disability and use of FMLA leave.   Under the *McDonnell Douglas* burden shifting analysis used to evaluate Plaintiff's Title VII, FMLA, and ADA claims, the Court determined that Defendant presented a legitimate non-discriminatory reason for termination, and Plaintiff failed to meet his burden of demonstrating that the reason for termination was pretextual. The Court's adjudication of Plaintiff's Section 1981 claims produced no different result; Defendant successfully supported its arguments with admissible evidence or, in certain instances, successfully demonstrated an absence of evidence in support of Plaintiff's case.   Again, Plaintiff failed to meet his burden of showing that issues of material fact remained.  As he premised his claim for intentional infliction of emotional distress on the facts supporting his Title VII, FMLA, ADA, and Section 1981 claims, no basis for relief regarding that claim survived.   Accordingly, the Court recommends that

27

Defendant's motion for summary judgment be granted and Plaintiff's Amended Complaint be dismissed with prejudice.

## PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Plaintiff filed a motion for summary judgment on January 3, 2011.  (Docket #176 (sealed #175).)  The Court perceives no new or distinctive issues or arguments upon review of this motion, different from those raised in the multiple filings on Defendant's motion for summary judgment.  The Court rests on its conclusions stated above and recommends that Plaintiff's motion for summary judgment be denied, for the same reasons that Defendant's motion be granted.

## PLAINTIFF'S MOTION FOR LEAVE TO AMEND

In Plaintiff's Second Motion for Leave to Amend Original Title VII Complaint, Plaintiff requests leave to add a claim for exemplary damages pursuant to Colorado statute for his claim of intentional infliction of emotional distress.  (Docket #265 at 1.)  Plaintiff further seeks leave to add a claim asserting "libel, slander and defamation" and a claim for a violation of the Colorado Wage Claim Act.  (*Id.* at 7-8.)  Defendant objects to the proposed amendments on the basis of undue delay, undue prejudice, and futility of amendment.  (*See* docket #277.)

The grant or denial of leave is committed to the discretion of the district court.  *See Duncan v. Manager, Dep't of Safety, City & Cnty. of Denver*, 397 F.3d 1300, 1315 (10th Cir. 2005).  The Court must heed Rule 15's mandate that the "court should freely give leave when justice so requires."  Fed. R. Civ. P. 15(a)(2) (2011).  *See also Foman v. Davis,* 371 U.S. 178, 182 (1962); *Duncan*, 397 F.3d at 1315.  Leave to amend should be refused "only on a showing of undue delay, undue prejudice to the opposing party, bad faith or dilatory motive, failure to cure deficiencies by amendments previously allowed, or futility of amendment."  *Duncan*, 397 F.3d at 1315.  *See also Foman,* 371 U.S. at 182.

28

As discussed above in the Court's recommendation on Defendant's motion for summary judgment, Plaintiff's claim for intentional infliction of emotional distress lacks merit, thus rendering Plaintiff's request for statutory exemplary damages moot. Regarding the claim of "libel, slander and defamation," not only would Plaintiff's proposed amendment not withstand a motion pursuant to 12(b)(6), the Court agrees with Defendant that the proposed amendment is unduly delayed.

The Scheduling Order set the deadline for the amendment of pleadings at March 29, 2010. (Docket #30 at 6.) No request for an extension of this deadline was filed until Plaintiff's motion to modify the schedule filed March 11, 2011 (docket #266), contemporaneously with the motion to amend presently before the Court. Plaintiff asserts that newly discovered evidence provides good cause for extending the deadline for amendment, but does not identify the evidence nor explain its significance. Moreover, Plaintiff was readily aware of the facts underlying this claim at the time of the at-issue events; he provides no compelling reason as to why this request is filed nearly one full year after the deadline. In any event, Plaintiff bases this claim on Defendant's proffered reason for his termination, that is, the assignment of a static IP address to Plaintiff's modem, without Plaintiff paying for such service. As explained in this Court's recommendation above on Defendant's motion for summary judgment, the Court finds that the evidence supports Defendant's presented reason for termination as legitimate and non-discriminatory. Similar to Plaintiff's proposed amendment for exemplary damages, this finding renders Plaintiff's proposed claim of "libel, slander and defamation" at least moot, if not futile.

Regarding Plaintiff's proposed claim pursuant to the Colorado Wage Claim Act, the Court again agrees with Defendant. The proposed amendment is premised on Plaintiff's unequal pay claim, under Section 1981. The Court found above that this claim lacks merit. Plaintiff's presented alternative for this proposed amendment does not cure the original deficiency; in his reply brief, Plaintiff suggests an alternate basis for a Colorado Wage Claim Act claim, in that his termination

occurred on February 4, 2008, but he was paid on February 5, 2008.  (Docket #279 at 8.)  "The

Colorado Wage Claim Act provides for recovery of wages or compensation earned by employees."

*Lester v. Gene Express, Inc.*, No. 09-cv-02648-REB-KLM, 2010 WL 3941417, at *6 (D. Colo. Sept.

27, 2010) (citing Act).  Plaintiff, by his own admission, was paid through February 5, 2008.  Neither

factual basis provides a viable Colorado Wage Claim Act claim, thus the Court concludes this

request is futile.[9]  In sum, the Court concludes that Plaintiff's proposed amendments are moot,

unduly delayed, and futile; thus, the Court recommends Plaintiff's second motion for leave to amend

be denied.

## CONCLUSION

Accordingly, for the reasons stated above and the entire record herein, the Court

**RECOMMENDS** Defendant's Motion for Summary Judgment [filed September 30, 2010; docket

#65] be **GRANTED**; Plaintiff's Motion for Summary Judgment [filed January 3, 2011; docket #176

(sealed #175)] be **DENIED**; Plaintiff's Second Motion for Leave to Amend [filed March 11, 2011;

docket #265] be **DENIED**; and Plaintiff's Amended Complaint be **DISMISSED WITH**

**PREJUDICE**.[10]

---

[9]This proposed amendment is also unduly delayed, for the same reasoning stated above regarding the proposed "libel, slander, and defamation" claim.

[10]Be advised that all parties shall have fourteen (14) days after service hereof to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned.  Fed. R. Civ. P. 72.  The party filing objections must specifically identify those findings or recommendations to which the objections are being made.  The District Court need not consider frivolous, conclusive or general objections.  A party's failure to file such written objections to proposed findings and recommendations contained in this report may bar the party from a de novo determination by the District Judge of the proposed findings and recommendations.  *United States v. Raddatz*, 447 U.S. 667, 676-83 (1980); 28 U.S.C. § 636(b)(1).  Additionally, the failure to file written objections to the proposed findings and recommendations within fourteen (14) days after being served with a copy may bar the aggrieved party from appealing the factual findings of the Magistrate Judge that are accepted or adopted by the District Court.  *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *In re Garcia*, 347 F. App'x 381, 382-83 (10th Cir. 2009).

Respectfully submitted this 6th day of May, 2011, at Denver, Colorado.

BY THE COURT:

Michael E. Hegarty
United States Magistrate Judge